Statement of the Case.
MONROE, J.
Plaintiff seeks to compel defendant to accept title to a certain piece of real estate, in New Orleans, and has appealed from a judgment rejecting his demand to that effect. It appears that defendant ¿greed with John Reusch, the then owner, to buy the property for $6,500 cash; that he deposited $650 with plaintiff, who was acting as the agent of Reusch, to bind the bargain ; that he declined to comply with the agreement, because upon examination the title proved to be unsatisfactory; that Reusch then made a conveyance of the property to plaintiff and subrogated him to his. (Reusch’s) rights under said agreement. Defendant’s objections to the title arise from the circumstances of its history, which are as follows:
Reusch acquired the property in October, 1906, during the life of his wife, between whom and himself their existed the community of acquéts establised by our law; the agreed price being $2,800, of which $900 was paid in cash, and for the balance the purchaser gave three notes of $633.33 each, payable in one, two, and three years. Mrs. Reusch died, childless and intestate, in March, 1908, and during the same month her surviving husband filed a petition in the civil district court alleging those facts, and also alleging that he was her sole heir, and praying that an inventory be taken of the property of her estate. The inventory was taken, accordingly, and showed community property, consisting of furniture, household effects, and cash, and separate property, consisting of a diamond ring; the real estate here in question not being included therein. Thereafter said surviving husband presented another petition, reciting the taking of the inventory, and alleging and praying as follows:
“That .petitioner herewith files a correct copy of the said inventory, affidavits certifying to-the nonexistence of heirs, either absent or otherwise, and a * * * bond, with good and solvent security, conditioned as the law requires, for the appraised value of his said wife’s estate, to wit, the sum of $700. Wherefore * * * petitioner prays that the bond * * * be accepted, approved, and that he be recognized as owner, entitled, in his own right, to one-half of all the property, both personal and real, belonging to the community existing between himself and his said -wife; that he be put in possession thereof with the usufruct of the other half. And petitioner further prays that he be further recognized as the sole and only heir of (sic) law of his wife and (sic) such entitled to inherit her entire estate, consisting of her one-half of the aforesaid community, and that he be put in possession thereof, and for general relief.”
There was an affidavit, signed by two persons, filed with the petition, to the effect that the decedent “left no forced heirs nor relations whatever, either absent or otherwise, and all the property she may have left belongs to the community of acquéts and gains- and was acquired during the marriage between herself and her surviving husband, John Reusch.”
There was judgment recognizing the petitioner as surviving spouse, in community, of the decedent, and, as such, entitled, in his own right, to an undivided half of the community property, and, as usufructuary, to the other half; further recognizing him “as the-sole and only heir of said' decedent, in default of other heirs, and, as such, entitled to-the remaining half of said estate”; and, finally, decreeing:
“That the above-named petitioner, in his. above-recited capacity, in the proportion above mentioned, be put in possession of the entire estate left by said decedent, conditioned on his-giving bond with good and solvent security in the sum of $700; said bond to stand in full force and effect for a period of three years.”
No attorney was appointed to represent the absent heirs of the wife, and no such. *755 bond as is referred to in the petition and judgment above quoted appears to bave been filed; nor would such bond, if it bad been filed, bave corresponded with tbe figures shown by the inventory, which are in themselves conflicting.
In the trial in the district court, it was •shown, about as conclusively as anything can be shown, against an interest which is not represented, that Mrs. Reusch left no heirs ■of the blood, direct or collateral. It was also shown that, as a matter of fact, the cash portion ($900) of the price of the property here in question was paid from money which John Reusch inherited from his father, and that at least two of the notes, representing the credit portion of the price, were paid aft>er the death of Mrs. Reusch. The money used in paying the first note, which fell due in October, 1907, and in improving the property, for which $2,200 were expended, was derived in part from the revenues of property which Reusch inherited from his father, •and in part from the proceeds of the mortgage or the sale of a piece of property which he had received from his father as a donation inter vivos.
Opinion.
[1] The law provides that the “partnership or community of acquets or gains,” superinduced by marriage, if there be no stipulation to the contrary, consists, among other things:
“Of the estate which they (the partners) may acquire during marriage, either by donations made jointly to them both, or by purchase, or in any other similar way, even though the purchase be only in the name of one of the two and not of both, because in that case the period ■of time when the purchase is made is alone attended to and not the person who made the purchase.” Oiv. Code, art. 2402. as amended and re-enacted by Act No. 68 of 1902, p. 95.
The accepted interpretation of the law thus quoted may be stated, in the language of Slidell, .1., as follows:
“It may be conceded that, although the.general rule established by these Codes (referring to the Codes of 1808 and 1825) is that purchases made during marriage, by either of the spouses, belong to the community, yet that a wife may acquire separate property by the bona fide reinvestment of her paraphernal funds, of which her husband had not the administration. * * * And it may also be conceded that, upon principles of equality and reciprocity, property purchased by the husband, with his separate funds, and under circumstances manifesting a distinct and clear intention to invest them for his separate account, should be considered his separate property. But, if this be the proper rule, the defendant has not brought himself within it; for the intention to reinvest for his separate benefit does not appear.” Young v. Young, 14 La. Ann. 611. See, also, Durham v. Williams Tutrix et al., 32 La. Ann. 162; Moore v. Stancel, 36 La. Ann. 823; Heirs of Murphy v. Jury & Gillis, 39 La. Ann. 785, 2 South. 575; Succession of Muller, 106 La. 94, 30 South. 329; Sharp v. Zeller, 110 La. 61, 34 South. 129.
In the instant case, there is nothing in the act by which the property was acquired to indicate that Reusch intended, in.making the purchase, to reinvest his separate funds for his separate benefit, so that there can be no doubt that the title fell into the community, and that he became a creditor of the community for so much of his separate funds as he invested in it, not, including, however, funds derived by him as revenue from his separate property. Succession of Boyer, 36 La. Ann. 506.
It is said, that it should be held:
“That the proof is absolute that Minnie Harwood Reusch had no relations, and that, three years having elapsed since her death, her surviving spouse can make good title to this property, should the court decide that one-half thereof belongs to her succession,” etc.
Oiv. Code, art. 930, however, requires that the surviving husband, called to the succession of the wife, must cause the seals to be affixed, and be authorized to take possession—
“after having caused a true and faithful inventory to be made, * * * in the presence of a person appointed to defend the interest of the absent heirs of the deceased, in case there are any, and after having given good and sufficient security, as prescribed in the following article.”
Article 931 provides that the security to be given shall be of the estimated value of the effects left by the deceased, to the end *757 'of securing their restitution in case any heir should come forward within three years.
And article 932 provides that, during the three years provided for in article 931, the husband cannot, in any manner, alienate the immovables which have thus come into his possession, unless it be under the authority •of court, at public auction, and in eases in which their alienation is deemed necessary. [2] It is true that more than three years have now elapsed since the rendition of the .judgment putting Reusch in possession, though that delay had not expired when this proceeding was instituted, nor yet when the .judgment appealed from was rendered. But in this instance the delay had no legitimate ■starting point, since the judgment was wholly ex parte; the plaintiff Reusch having, ex industria, informed the court, in the petition for inventory filed by him, that the appointment of an attorney to represent absent heirs was unnecessary, and no such attorney having been appointed. The judgment relied on is therefore of no more value than any other judgment rendered against a party who has not been cited or represented; in other words, it is an absolute nullity, and plaintiff is no better off with respect to the title that 'he sets up to his deceased wife’s interest in the community property than if he had talr•en possession of that interest without any .judgment at all. Succession of Allen, 44 La. Ann. 801, 11 South. 42; Succession of Barber, 52 La. Ann. 963, 27 South. 361. See, also, Succession of Nash, 48 La. Ann. 1573, 21 South. 254.
We are therefore of opinion that the judge ■a quo correctly held that the title tendered -was not such as defendant is bound to accept, and that plaintiff should be condemned to refund the earnest money deposited by .him.
The judgment appealed from is, accordingly, affirmed.