(101 South. 395)

No. 25910.

## Succession of WATKINS.

(June 28, 1924. Rehearing Denied by Whole Court Sept. 25, 1924.)

*(Syllabus by Editorial Staff.)*

**1. Husband and wife &#9901;256—Land purchased during marriage held community property; deeds not showing contrary.**

Lands purchased during marriage, though bought in husband's name and paid for with funds belonging to his separate estate, became community property, where deeds did not state that price was paid with funds of husband's separate estate, or that title was to vest in his separate estate, as required by Rev. Civ. Code, art. 2402.

**2. Husband and wife &#9901;255—Land acquired in exchange for corporate stock held within statute making community property land acquired by "purchase or similar way."**

Civ. Code, art. 2402, making land acquired during marriage "by purchase or in any other similar way" a part of community, *held* applicable to land conveyed to husband during marriage, in return for capital stock belonging to husband, since transaction, if not strictly sale, is transfer in "similar way," within statute.

**3. Husband and wife &#9901;273(1)—Widow inherited decedent's half interest in community estate, in absence of ascendant or descendant heirs.**

Under Civ. Code, art. 915, as amended by Acts 1916, No. 80, widow of decedent, who left neither ascendant nor descendant heirs, inherited his half interest in the community estate, and owned other half as surviving partner in community.

**4. Executors and administrators &#9901;3(3)—Succession; existence of debt from community estate to husband's separate estate not ground for appointment of administrator, where wife sole heir.**

Where widow inherited husband's estate, existence of debt by community estate to husband's separate estate was not ground for appointment of administrator, since the debt was extinguished by being inherited by sole heir.

**5. Taxation ⊛═893 — Succession; liability for inheritance tax and amount held determinable in widow's proceeding for possession of community estate without appointment of administrator.**

In proceeding by widow to require defendants to show cause why she should not be sent into possession of community estate without appointment of administrator, question whether succession owed an inheritance tax, and amount thereof, claimed to make necessary such appointment, could be determined; all parties concerned being before court.

**6. Executors and administrators ⊛═3 (3)—Succession; appointment of administrator not essential to determination of amount of inheritance tax.**

Amount of inheritance tax under Acts Ex. Sess. 1921, No. 127, §§ 3, 7, 8, 9, 10, and 11, may be determined without appointment of administrator, since proceedings may be brought by an heir or a legatee.

**7. Executors and administrators ⊛═20 (3) — Succession; collateral heir cannot require appointment for community estate in which collateral heirs have no interest.**

Collateral heir cannot compel court, under Civ. Code, art. 1047, to appoint administrator for community estate in which collateral heirs have no interest.

Appeal from Fifteenth Judicial District Court, Parish of Calcasieu; Thomas F. Porter, Jr., Judge.

In the matter of the succession of J. B. Watkins, deceased. From a judgment appointing an administrator, Mrs. Elizabeth M. Watkins, the widow, appeals. Judgment annulled, and case remanded, with directions.

Pujo & Bell, of Lake Charles, for appellant.

Leon Sugar, of Lake Charles, Thomas Harley, of Lawrence, Kan., and E. E. Blake, of Oklahoma City, Okl., for appellees.

By Division A. composed of O'NIELL, C. J., and ROGERS and BRUNOT, JJ.

O'NIELL, C. J. This is an appeal from a judgment appointing an administrator of a succession. The appellant is the widow of the deceased, J. B. Watkins. She claims that the succession does not owe any debts, and that the appointment of an administrator imposes unnecessary expense upon her. The appellees are the collateral heirs of the deceased, inheriting his separate estate, and the sheriff, in his capacity of collector of inheritance taxes. There are no heirs in the ascending or descending line. The widow therefore inherits her husband's half of the property belonging to the marital community, and owns the other half as surviving partner in the community. Act No. 80 of 1916 ; Succession of Greenlaw, 148 La. 255, 86 South. 786.

The suit was commenced by the widow's filing a petition in court, praying that the collateral relations of her deceased husband, and the sheriff, in his capacity of collector of inheritance taxes, should be cited to show cause why she should not be sent into possession of the community estate in Louisiana, without the expense or formality of an administration. She annexed to her petition a list of the lands which she alleged belonged to the marital community, and a list of lands belonging to the separate estate of the deceased; and she prayed that the collateral heirs should be given possession of the separate estate, in the proportions due them. They and the tax collector answered, averring that the succession did owe debts and that therefore an administration was necessary. They averred that the lands which the widow claimed as community property belonged to the separate estate of the deceased, because they were paid for with his separate funds, consisting of stock in a foreign corporation; and they averred, in the alternative, that, if the lands thus bought became community property, then the community owed the separate estate of the deceased the value of the stock which went to pay for the lands. The widow rejoined that, if the community did owe such debt to the

separate estate of her deceased husband, the debt was personal property, the situs of which was at the last residence and domicile of the deceased, in the state of Kansas, where he died, and where his succession was opened, and that she inherited there all of the property of the succession that was governed by the laws of that state.

The case went to trial on those issues, and, in a very logical written opinion, the court gave judgment in favor of the widow, maintaining that the succession owed no debts, and that an administration was not necessary. But the court granted a new trial, and thereafter reversed the judgment and ordered that an administrator should be appointed. The court maintained, yet, that the succession did not owe any debts, except the supposed debt of the community estate to the separate estate of the deceased, for the value of the capital stock that went to pay for the lands bought by the community; and, "for this reason only," said the judge, he deemed an administration necessary "to effect a settlement between the community and the separate estate of the decedent." The judge did not conclude, finally, that the community did owe a debt to the separate estate, or that the debt was not extinguished by being inherited by the widow, who is the sole heir of the community estate. What the court maintained in that respect, as we understand, was that the dispute between the widow and the collateral heirs of the deceased, as to whether the community estate owed a debt to the separate estate of the deceased, made it necessary to appoint an administrator pending a settlement of the dispute; for the judge concluded his written opinion with the statement, "If no such claim exists, an administration is not necessary." At the same time, the judge appointed an administrator.

[1] The lands which the widow has listed as belonging to the marital community were bought during the marriage, and therefore did become community property, notwithstanding they were bought in the name of the husband alone, and were paid for with funds that belonged to his separate estate. Rev. Civ. Code, art. 2402. When a married man, under the régime of the marital community, buys real estate in his own name and pays for it with funds belonging to his separate estate, if he desires the newly acquired title to be vested in his separate estate, he must have the declaration embodied in the deed that the price is paid with his separate funds and that the title is to vest in his separate estate. Without such declaration in the deed, the marital community acquires the title and is indebted to the separate estate of the husband for the price paid. Sharp v. Zeller, 110 La. 61, 34 South. 129; McWilliams v. Stair, 128 La. 752, 55 South. 343; Succession of Andrus, 131 La. 940, 60 South. 623. The deeds for the lands claimed by the widow as community property in this case do not contain a statement either that the price was paid with funds of the husband's separate estate or that the title for the lands was to vest in the separate estate.

[2] The fact that the price paid for the lands was represented by capital stock, instead of being cash or coin or currency, makes no difference. Article 2402 of the Civil Code, declaring that a purchase of property in the name of either spouse during the marriage shall vest the title in the marital community, does not limit its effect to property acquired by contracts of sale, strictly defined, but, in terms, applies the rule to property acquired "by purchase or in any other similar way." Surely, when the price is paid, not in cash or currency or coin, but with capital stock of a corporation, or with any other negotiable or transferable instrument, if the transaction be not, strictly speaking, a sale, it is a transfer in-

a "similar way," within the meaning of the Code.

Our conclusion, therefore, is that the judgment appealed from is correct, in so far as it maintains that the lands which the widow claims as community property do belong to the community, and that the community estate merely owed J. B. Watkins for the price paid for the lands.

[3, 4] According to article 915 of the Civil Code, as amended by Act 80 of 1916, p. 201, there being neither ascendant nor descendant heirs of the deceased, his widow inherited his half interest in the community estate, and she owns the other half as surviving partner in the community. There can be no dispute about that. Nor is it disputed that the debt which the community estate would otherwise owe to the separate estate of J. B. Watkins is extinguished by the fact that it was inherited by his widow, who is the sole heir of the community estate. It was proven, and is not denied, that, under the law of Kansas, where J. B. Watkins always had his residence, and where he died, his widow inherited his estate. It cannot be disputed that the debt which would be due by the community estate in Louisiana to the separate estate of J. B. Watkins, if the debt were not extinguished by being inherited by the sole heir of the community estate in Louisiana, would be governed by the laws of Kansas. The widow is therefore in the anomalous situation of owing the supposed debt to herself. As the sole heir and legal representative of the community estate in Louisiana, she owes the debt to her husband's separate estate; and, as his sole heir and legal representative in Kansas, she inherits the debt. And so, when J. B. Watkins died, there could not be a debt due by the marital community to his separate estate. It does not require an administrator to declare that fact. The contest was exclusively between the heir of the community estate in Louisiana and the heirs of the separate estate here. No one else was concerned in the matter, and there is no reason why an administrator should have been made a party to the contest.

[5, 6] It is seriously contended by appellant that this succession does not owe an inheritance tax, because the succession was opened before the enactment of Act 127, Ex. Sess. 1921, p. 323, and the property in this state had borne its just proportion of taxes at the time of J. B. Watkins' death. Under the inheritance tax law prevailing until the enactment of the statute of 1921—that is, under the provisions of Act 109 of 1906, even as amended by Act 199 of 1920—inheritance taxes were not imposed upon property that had already borne its just proportion of taxes. The question whether the succession owes an inheritance tax, and, if so, how much, should be determined in this proceeding, in which all parties concerned are before the court. According to Act 109 of 1906, especially sections 3, 7, 8, 9, 10 and 11, it was not necessary, and according to the corresponding sections of the Act 127, Ex. Sess. 1921, it is yet unnecessary, to have an administrator appointed to determine the amount of the inheritance tax that a succession may owe. The proceedings may be brought by an heir or a legatee.

[7] In a supplemental pleading, in answer to this proceeding on the part of the widow, the collateral heirs, 42 in number, announced their desire to accept the succession under the benefit of inventory, as provided in articles 1032 et seq. of the Civil Code. We assume that the purpose was to bring the case under the provisions of article 1047 of the Civil Code; which the collateral heirs seem to construe as meaning that any one of them could thus compel the judge to appoint an administrator, even for the community estate, in which the collateral heirs have no interest whatever, and even

though the succession does not owe any debts. The article referred to declares that, when some of the heirs accept the succession unconditionally, "and others claim the benefit of the term for deliberating," the succession must be opened, an inventory must be made of the effects of the succession, and the judge "shall appoint an administrator to manage them, until a partition of the same be made among the heirs." That language surely cannot be a warrant for any one of the collateral heirs in this case to compel the judge, for no just cause, to appoint an adminstrator of the community estate, in which the collateral heirs have no interest whatever. What function could an administrator perform? There are no debts to be paid. It is not suggested that there are to be instituted suits which the widow or heirs could not institute. The article of the Code cited says that the administrator is to manage the effects of the succession "until a partition of the same be made among the heirs." A partition of the community estate in this case is not possible, because there is only one heir or owner of the community estate. It may be that these collateral heirs have the absolute right, or that any one of them has the right, by accepting the succession under the benefit of inventory, to compel the judge to appoint an administrator to manage the lands belonging to the separate estate of the deceased, "until a partition of the same be made among the heirs." But that would not warrant the idle ceremony and useless expense of appointing an administrator for the community estate, in which the collateral heirs are not concerned.

The judgment appealed from is annulled, and the case is ordered remanded to the district court, for further proceedings consistent with the foregoing opinion. The costs of this appeal are to be borne by the separate estate of the deceased, J. B. Watkins; all other costs are to be determined in the judgment sending the widow into possession of the lands belonging to the community of acquêts and gains.

Rehearing refused by the WHOLE COURT.